IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROTHSCHILD DIGITAL CONFIRMATION, LLC,

Plaintiff,

v.

COMPANYCAM, INC.,

Defendant.

C.A. No. 19-1109-MN

**OPENING BRIEF IN SUPPORT OF COMPANYCAM, INC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Rachael D. Lamkin
LAMKIN IP DEFENSE
100 Pine Street, Suite 1250
San Francisco, CA 94111
(916) 747-6091

Dated: August 19, 2019

**TABLE OF CONTENTS**

I. SUMMARY OF THE ARGUMENT ....... 1

II. STATEMENT OF FACTS AND NATURE AND STAGE OF THE PROCEEDING ....2

III. ARGUMENT ....... 4

*A. Alice* Step One ....... 5

*B. Alice* Step Two ....... 11

IV. CONCLUSION ....... 12

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208, 134 S. Ct. 2347 (2014) ..... 4, 11

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ..... 4

*Bilski v. Kappos*,
561 U.S. 593 (2010) ..... 4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ..... 4

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ..... 12

*Epic IP LLC v. Backblaze, Inc.*,
351 F. Supp. 3d 733 (D. Del. 2018) ..... 4

*In re TLI Communications LLC Patent Litigation*,
823 F.3d 607 (Fed. Cir. 2016) ..... 5, 11

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) ..... 11

*Secure Cam, LLC v. Tend Insights, Inc.*,
351 F. Supp. 3d 1249 (N.D. Cal. 2018) ..... 5, 11

*SmithKline Beecham Corp. v. Apotex Corp.*,
403 F.3d 1331 (Fed. Cir. 2005) ..... 1

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ..... 4

Defendant CompanyCam, Inc. (“CompanyCam”) respectfully files this Federal Rule of Civil Procedure (“Rule”) 12(b) Motion to Dismiss as the claims of U.S. Patent No. 7,456,872 B2 (the “Asserted Patent” or the ’872 patent) are not patent eligible pursuant to 35 U.S.C. § 101.

## I. SUMMARY OF THE ARGUMENT

The United States Supreme Court and the Federal Circuit recognized the “significant public policy interest in removing invalid patents from the public arena.” *SmithKline Beecham Corp. v. Apotex Corp*., 403 F.3d 1331, 1354 (Fed. Cir. 2005 (collecting cases)). Further, “public policy requires that only inventions which fully meet the statutory standards are entitled to patents.” *Id*. at 1354. Indeed, “there is a stronger public interest in the elimination of invalid patents than in the affirmation of a patent as valid.” *Id*. at 1355. Particularly where, as here, the claims of the Asserted Patent are indistinguishable from claims repeatedly held to be patent ineligible.

Rothschild (the named inventor, “manager” of the shell Plaintiff LLC entity, and sole owner of the Asserted Patent) admitted, repeatedly, that each of the modules of the claimed invention are “standard” and “conventional”. In fact, the ’872 Patent employs the terms standard and conventional twenty (20) times to describe the claimed ideas.

Finally, a key policy consideration underlying Section 101 is the prohibition against patenting long-standing human practices. Here, Rothschild admits that the ’872 patent covers an activity that humans have long-since practiced: creating photo albums and organizing photos thereon:

> Photographs are taken for a variety of personal and business reasons. During the course of the year, an individual may take numerous photographs of various events. During these events, quite often there is a variety of different individuals and items present in these photographs. In the prior art, when one desires to catalog these images in a particular order, they usually are left to placing these images manually into photograph albums. This is a very extensive, manual procedure requiring a significant amount of

> time. In addition, it is very limited with regard to the amount of information that can be associated with the image in a quick and easy manner. While some photo albums allow the writing and placing of text, the entering of this data is a very time consuming and arduous affair. Once having sorted these images into particular albums which may represent categories of interest, it is extremely difficult to retrieve and/or reorganize the images into other categories.

’872 Patent, 1:31-47.

The ’872 Patent merely takes something humans have been doing for ages and places said human activity on a generic computer. The claims are not patent eligible.

## II. STATEMENT OF FACTS AND NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Rothschild Digital Confirmation, LLC, filed this action on June 15, 2019 alleging infringement of the ’872 patent. (D.I. 1.) On August 5, 2019, Plaintiff filed an amended complaint (D.I. 8.) This motion seeks to dismiss all claims in the amended complaint.

The ’872 patent “relates generally to digital image and data processing, and more particularly, to devices, systems and methods for embedding and retrieving information in digital images and using the information to organize, process and control the digital images, where the information may include location information, time and date information and user verification information.” ’872, 1:22-28.

Figures 1A and 1B of the ’872 patent are reproduced below:



Figures 1A and 1B are front and back views, respectively, of a device for capturing digital images and embedding information in the captured images. ’872, 2:48–51.

Claim 1 is representative of the Claims:

1. A locational image verification device for verifying an assignment of a user comprising:

> **a user verification module** for verifying an identity of a user of the device, wherein upon verification, the user verification module enables operation of the device and provides an assignment to the user;
>
> **a capture module** for capturing an image relating to the assignment and creating a digital image file, wherein the user verification module verifies the identity of the user of the device at a time of the image capture;
>
> **a locational information module** for determining a location of the device when capturing the image;
>
> **a date and time module** for determining a date and time of the image capture;

> **a processing module** for associating the assignment, the user identity, location information and the time and date to the digital image file; and
>
> **an encryption module** for encrypting the digital image file and associated information upon image capture.

’872, Claim 1 (emphasis added).[1]

Upon review of the claim language, immediately one sees that the ’872 is not directed to a specific improvement in the capabilities of computing devices. *See Epic IP LLC v. Backblaze, Inc*., 351 F. Supp. 3d 733, 737 (D. Del. 2018) (collecting cases). The claims of the ’872 Patent are draw toward generic implementation as opposed to specific technological solutions.

## III. ARGUMENT

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring); *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1365 (Fed. Cir. 2018), petition for cert. filed, 2018 WL 4819013 (U.S. Sept. 28, 2018) (No. 18-415).

Under the *Alice* calculus, courts must use a two-step approach mandated by the Supreme Court. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2355 (2014). First, a court must ask whether the claims are directed to a patent-ineligible abstract idea. *Id*. And if they are, the court must then decide whether the claims add an “inventive concept”—“an element or combination of elements that is ‘sufficient to ensure that the patent in practice

[1] Claim 1 is representative because all the claims are “substantially similar and linked to the same abstract idea.” *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

amounts to significantly more than a patent upon the [abstract idea] itself.'" *Id*. (quoting *Mayo v. Prometheus*, 566 U.S. 66, 73 (2012)). Unless these additional elements add something significant to the abstract idea, the claims are ineligible. *Id.*

Below, Defendant cites heavily from *Secure Cam, LLC v. Tend Insights, Inc*., 351 F. Supp. 3d 1249 (N.D. Cal. 2018), a case on all fours with the case at-bar.

**A. *Alice* Step One**

At step one of the *Alice* analysis, the Court looks to the "character as a whole" of the claims to determine whether it is directed to an abstract idea. *Secure Cam*, at 1254. Here, the claims can be characterized as drawn toward capturing digital images related to an assignment, stamping those images with information, and organizing said digital images accordingly.

Claims drawn toward stamping information on digital images and organizing same have repeatedly found to be abstract. *See Secure Cam*, at 1255-56; *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 613 (Fed. Cir. 2016). As in *Secure Cam*:

> the claims at issue do not describe a specific improvement to digital camera functionality. Rather the claims at issue describe "conventional or generic technology in a nascent but well-known environment." The digital camera, processor and memory identified in the Patents-in-Suit are described in conventional and generic terms. The remaining element—the analysis module—is described in purely functional terms as a component configured to perform image data analysis and to automatically generate a category tag. This description of the analysis module is no different from the vague description of the server in *TLI* that the Federal Circuit found patent-ineligible.

*Secure Cam*, at 1255-56 (*quoting TLI Comms*, at 612-13).

"[T]he claims at issue do not describe a specific improvement to digital camera functionality. Rather the claims at issue describe 'conventional or generic technology in a nascent but well-known environment.'" *Id.*

Rothchild's own admissions in the '872 specification makes clear that the claims are drawn to conventional subject matter:

| ’872 Claim 1 | Rothschild’s Admissions |
| --- | --- |
| 1. A locational image verification device for verifying an assignment of a user comprising: | |
| **a user verification module** for verifying an identity of a user of the device, wherein upon verification, the user verification module enables operation of the device and provides an assignment to the user; | “all of the information captured by the capture module 122 including the associated information from the auxiliary input module 126, e.g., time and date, the user input module 124, e.g., an audio stream, **and the user verification module 132**, the user's identity, **would be immediately encrypted by the encryption module 140** (step 712). **The encryption module 140 will use standard code encryption algorithms** currently in use or that will be in use in the future such as DES, Triple DES, Blowfish, RSA, MD5, etc.” 14:50-58.<br>“The device 100 will also include a user verification module . . . [such as a] finger print reader, . . . [for example] the BioTouch™ fingerprint reader **commercially available** from Identix Incorporated of Minnetonka, Minn.” 5:38–42; |

| ’872 Claim 1 | Rothschild’s Admissions |
|---|---|
| | “**Using standard computer programming and processing**, this database would then locate the stored digital image and associated files/information and also **process the users request(s) regarding the digital image**.” 7:46-49.<br><br>“The user will use the transmission module 112 of the device 100 to receive information through the Global Computer Network from the user's office or supervisor as to the specific geographic assignments that the user has been given (step 704). In a preferred embodiment, this information will be transferred from the user’s office or supervisor from **a standard relational database** that will contain data on the specific locations that the user is expected to visit along with tasks associated with each location.” 13:58-61. |

| ’872 Claim 1 | Rothschild’s Admissions |
|---|---|
| **a capture module** for capturing an image relating to the assignment and creating a digital image file, wherein the user verification module verifies the identity of the user of the device at a time of the image capture; | “The user will be able to scan the printed digital images with the device 100 and the scanning module 130 would scan in the symbology and **using standard computer programming and the computer processing module**, the device would translate the symbology to extract the name of the digital image and the file locations (whether local or on the Global Computer Network) of the digital image.” 7:32-38. |
| **a locational information module** for determining a location of the device when capturing the image; | “The date and time module 136 will use standard computer chip processing technology widely in use, or alternatively, input from **locational information module 134, e.g., a GPS receiver**, to supply the date and time of the image capture.” 6:4-9.<br><br>“The locational information module 134 may include a receiver and antenna employing conventional locational information processing technology such as Global Positioning Satellite (GPS) Technology, |

| ’872 Claim 1 | Rothschild’s Admissions |
|---|---|
| | Loran Technology, or any other **available locational technology**[.]” 5:54–63; |
| **a date and time module** for determining a date and time of the image capture; | “The date and time module 136 will use **standard computer chip processing technology widely in use**, or alternatively, input from locational information module 134, e.g., a GPS receiver, to supply the date and time of the image capture.” 6:4-9. |
| **a processing module** for associating the assignment, the user identity, location information and the time and date to the digital image file; and | “Using **standard computer programming and processing**, this database would then locate the stored digital image and associated files/information and also process the users request(s) regarding the digital image.” 7:46-49.<br><br>“the local computer 402 will use relational database programming, e.g., **Structured Query Language (SLQ), and standard computer processing power** to respond to any user requests for each of the digital images. These requests include but are not limited to displaying the digital images in a |

| ’872 Claim 1 | Rothschild’s Admissions |
|---|---|
| | particular sequence, or sorting the digital images by owner, date, location, description, etc.” 11:28-35.<br><br>“The device 100, 200 would scan in the symbology and **using standard computer programming and computer processing**, translate the symbology to extract the name of the digital image and the file locations (whether local or on the Global Computer Network) of the digital image, or alternatively, the identifier of the record relating to the image.” 12:30-35. |
| **an encryption module** for encrypting the digital image file and associated information upon image capture. | **“The encryption module 140 will use standard code encryption algorithms** currently in use or that will be in use in the future such as DES, Triple DES, Blowfish, RSA, MD5, etc.” 14:50-58.<br><br>“The encryption module 140 will use **conventional code encryption algorithms** currently in use or that will be in use in the |

| ’872 Claim 1 | Rothschild’s Admissions |
|---|---|
| | future such as DES, Triple DES, Blowfish, RSA, MD5, etc. to encrypt the data[.]” 6:32–35; |

As in *Secure Cam* and *TLI Communications*, the claims of the ’872 Patent are drawn to abstract ideas.

**B. *Alice* Step Two**

In evaluating step two, courts must “consider the elements of each claim both individually and ‘as an ordered combination’” and assess whether there are additional features in the claim that constitute an ‘inventive concept.’” *Secure Cam*, at 1256 (*quoting Alice*, 134 S.Ct. at 2357). “It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.” *Id*. (*quoting In re TLI Commc'ns LLC Patent Litig*., 823 F.3d at 613).

As in *Secure Cam*, “the invention could be implemented on a wide range of hardware.” *Secure Cam*, at 1256. As Rothschild stated, twice: “It is to be understood that the present disclosure may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof.” 3:56-59; 10:18-21.

Put another way, the “module that does A, module that does B, module that does C” “merely restate their individual functions—*i.e.*, organizing, mapping, identifying, defining, detecting, and modifying. That is to say, they merely describe the functions of the abstract idea itself, without particularity. This is simply not enough under step two.” *Intellectual Ventures I LLC v. Capital One Fin. Corp*., 850 F.3d 1332, 1341 (Fed. Cir. 2017).

In sum, the physical components described in the claims do not add an inventive concept. As the Federal Circuit has observed, "there is an important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them. The Patents-in-Suit describe the ends sought—analyzing and automatically categorizing digital images—without offering a particular inventive means of achieving this result." *Secure Cam*, at 1257 (*quoting Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)).

## IV. CONCLUSION

The '872 Patent purports to identify specific problems to be solved. '872, 1:59-2:6. But, '872 offers no specific technological solutions to those problems. The claims of the '872 Patent are not patent eligible.

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Rachael Lamkin
LAMKIN IP DEFENSE
100 Pine Street, Suite 1250
San Francisco, CA 94111
(916) 747-6091

Dated: August 19, 2019